SHANNON E. TURNER (CSB No. 310121)
sturner@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:    415.875.2300
Facsimile:     415.281.1350

DAVID K. TELLEKSON (admitted *pro hac vice*)
dtellekson@fenwick.com
JESSICA M. KAEMPF (admitted *pro hac vice*)
jkaempf@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:    206.389.4510
Facsimile:     206.389.4511

Attorneys for Defendant
Birdies, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROTHY'S, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> BIRDIES, INC., a Delaware corporation, <br><br> Defendant. | Case No.: 3:21-cv-02438-VC <br><br> **NOTICE OF MOTION AND MOTION OF BIRDIES, INC. FOR SUMMARY JUDGMENT OF INVALIDITY, OR IN THE ALTERNATIVE, NONINFRINGEMENT** <br><br> Date: February 10, 2022 <br> Time: 10:00 am <br> Place: Courtroom 04, 17th Floor <br> Judge: The Honorable Vince Chhabria <br> Trial Date: November 14, 2022 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ...................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.     INTRODUCTION ...............................................................................................................1

II.    FACTUAL BACKGROUND .............................................................................................2

     A.    Birdies begins selling the Blackbird in 2015. ........................................................2

     B.    Rothy's files its first application for the asserted patents in 2017. ........................4

     C.    Rothy's asserted patents follow a trend of slipper-cut ballerina shoes. ..................6

III.    STATUS OF DISCOVERY ..............................................................................................10

IV.    LEGAL STANDARD .......................................................................................................11

V.    ARGUMENT ....................................................................................................................12

     A.    The asserted patents are invalid. ...........................................................................12

          1.    The '017 patent is invalid as anticipated...................................................13

          2.    The asserted patents are invalid as obvious. .............................................15

               i.    The 2015 Blackbird qualifies as a primary reference. ...................16

               ii.    Any of a number of slipper-cut ballerinas, loafers, and flats with a knit appearance qualify as a secondary reference..................................................................................................18

               iii.    No secondary considerations preclude a finding of obviousness. ...................................................................................21

     B.    Birdies does not infringe. .......................................................................................22

          1.    Under any construction that escapes invalidity, the asserted patents are plainly dissimilar from the knitted Blackbird. ........................23

          2.    The absence of the features that differentiate the patents from the original Blackbird confirms non-infringement. ...................................24

VI.    CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001)................................................................12, 22, 23

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 11-CV-01846-LHK, 2012 WL 3071477 (N.D. Cal. July 27, 2012) .................24

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
853 F.2d 1557 (Fed. Cir. 1988), *abrogated on other grounds by Egyptian
Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc) .................16

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
731 F.2d 831 (Fed. Cir. 1984).................................................................................11

*Campbell Soup Co. v. Gamon Plus, Inc.*,
10 F.4th 1268 (Fed. Cir. 2021) .............................................................16, 17, 18, 21

*Door-Master Corp. v. Yorktowne, Inc.*,
256 F.3d 1308 (Fed. Cir. 2001)...............................................................................13

*Dow Chem. Co. v. Halliburton Oil Well Cementing Co.*,
324 U.S. 320 (1945).................................................................................................21

*Durling v. Spectrum Furniture Co.*,
101 F.3d 100 (Fed. Cir. 1996)...........................................................................15, 16

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc)..................................................22, 23, 24, 25

*Erickson v. Neb. Mach. Co.*,
No. 15-CV-01147-JD, 2015 WL 4089849 (N.D. Cal. July 6, 2015)........................3

*Harel v. K.K. Int'l Trading Corp.*,
994 F. Supp. 2d 276 (E.D.N.Y. 2014) .....................................................................23

*High Point Design LLC v. Buyer's Direct, Inc.*,
621 F. App'x 632 (Fed. Cir. 2015) ....................................................................13, 15

*High Point Design LLC v. Buyer's Direct, Inc.*,
730 F.3d 1301 (Fed. Cir. 2013)........................................................................15, 16

*In re Affinity Labs of Tex., LLC*,
856 F.3d 883 (Fed. Cir. 2017)..................................................................................21

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Kyocera Wireless Co. v. President Elecs., Ltd.*,
179 F. App'x 53 (Fed. Cir. 2006) .............................................................11

*Lanard Toys Ltd. v. Dolgencorp LLC*,
958 F.3d 1337 (Fed. Cir. 2020)..................................................11, 22, 25

*Lanard Toys Ltd. v. Toys "'R'" Us-Del., Inc.*,
No. 3:15-CV-849, 2019 WL 1304290 (M.D. Fla. Mar. 21, 2019) .........................25

*Lemelson v. Gen. Mills, Inc.*,
968 F.2d 1202 (Fed. Cir. 1992)............................................................12

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996).....................................................................12

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
747 F.3d 1326 (Fed. Cir. 2014)................................................. *passim*

*MRC Innovations, Inc. v. Hunter MFG., LLP*,
921 F. Supp. 2d 800 (N.D. Ohio 2013), *aff'd*, 747 F.3d 1326...............................18

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006)............................................................22

*Pond Guy, Inc. v. Aquascape Designs, Inc.*,
No. 13-CV-13229, 2014 WL 2863871 (E.D. Mich. June 24, 2014) ........................3

*Schering Corp. v. Geneva Pharms., Inc.*,
339 F.3d 1373 (Fed. Cir. 2003).............................................................13

*Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co.*,
444 F.2d 295 (9th Cir. 1970) ..............................................................12

*Spigen Korea Co. v. Ultraproof, Inc.*,
955 F.3d 1379 (Fed. Cir. 2020).............................................................16

*Sterner Lighting, Inc. v. Allied Elec. Supply, In*c.,
431 F.2d 539 (5th Cir. 1970) ..............................................................12

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
836 F. App'x 895 (Fed. Cir. 2020)......................................................22, 24

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
247 F.3d 1316 (Fed. Cir. 2001).............................................................13

*TriMed, Inc. v. Stryker Corp.*,
608 F.3d 1333 (Fed. Cir. 2010).............................................................15

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Union Carbide Corp. v. Am. Can Co.*,
 724 F.2d 1567 (Fed. Cir. 1984)......................................................................11

*Upsher-Smith Lab'ys, Inc. v. Pamlab, LLC*,
 412 F.3d 1319 (Fed. Cir. 2005)......................................................................13

*Voltstar Techs., Inc. v. Amazon.com, Inc.*,
 No. 13-CV-5570, 2014 WL 3725860 (N.D. Ill. July 28, 2014),
 *aff'd*, 599 F. App'x 385 (Fed. Cir. 2015)......................................................23

**STATUTES AND RULES**

35 U.S.C. § 102.................................................................................12, 13, 15, 19

35 U.S.C. § 103.........................................................................................12, 13, 15

35 U.S.C. § 171..........................................................................................................25

America Invents Act..............................................................................................19

Fed. R. Civ. P. 56(a).........................................................................................1, 11

**OTHER AUTHORITIES**

37 C.F.R. § 1.152 (2020)......................................................................................5, 24

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

**PLEASE TAKE NOTICE THAT** on February 10, 2022, or as soon thereafter as this matter may be heard by the Honorable Vince Chhabria in Courtroom 4, 17th Floor, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102,, Defendant Birdies, Inc. ("Birdies") will and hereby does move the Court under Federal Rule of Civil Procedure 56 for an order granting summary judgment in favor of Birdies and against Rothy's, Inc.[1]  Birdies bases its motion on this notice, the accompanying memorandum of points and authorities, the supporting declarations of Jessica M. Kaempf and Marisa Sharkey, all pleadings and documents on file in this action, and other such materials or arguments as the Court may consider.

**STATEMENT OF REQUESTED RELIF**

Birdies requests this Court grant it summary judgment because U.S. Patent Nos. D885,016 (the "'016 Patent"), D885,017 (the "'017 Patent"), D909,718 (the "'718 Patent"), D870,425 (the "'425 Patent"), and D925,874 (the "'874 Patent") (collectively, the asserted patents) are invalid; or in the alternative, because Birdies does not infringe each of the asserted patents.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

This case should never have been brought.  In this suit, Rothy's asserts five different design patents against a particular version of Birdies' "Blackbird" shoe, the Blackbird with a "knitted upper."  But the Blackbird—a shoe with a centuries-old silhouette—was originally launched in

---

[1] Counsel for Birdies met and conferred with lead counsel for Rothy's, who did not indicate that he was unavailable for the proposed February 10, 2022 hearing date.  While lead counsel for Rothy's indicated that he did not agree to the hearing date, his reason was not due to unavailability, but rather his position that extensive discovery would be needed before a hearing is scheduled.  As explained in further detail below, further discovery is not needed to resolve this case on summary judgment.  Birdies also notes that it has selected a hearing date of February 10, 2022, in anticipation of agreeing to a reasonable extension of Rothy's opposition brief given the upcoming holidays.

2015, more than a year prior to when Rothy's filed the earliest application for the asserted patents. Under Rothy's contentions that the Blackbird infringes its patents, this same shoe necessarily invalidates them.

Ultimately, by accusing the knitted Blackbird—a shoe with a silhouette that predates Rothy's patents—of infringement, Rothy's has created a catch-22 for itself. If the asserted patents are given Rothy's broad construction (broad enough to cover the knitted Blackbird), then the patents are necessarily invalid: the original (non-knit) Blackbird predates the asserted patents, and using a knit material does not save the patents from invalidity, particularly given the myriad of other preexisting knit flats, as well as the absence of knit from at least a subset of the asserted patents. Alternatively, if the patents are given a narrower reading that allows for differences (other than the knit material) between the original Blackbird and the asserted patents, then the knitted Blackbird does not infringe. In other words, differences that Rothy's could point to in an attempt to save the patents from invalidity would require a finding of non-infringement. The patents must be construed consistently for purposes of infringement and invalidity, and under any construction, Birdies is not liable because the patents are either invalid or not infringed. This Court should grant Birdies' motion for summary judgment.

## II.    FACTUAL BACKGROUND

### A.    Birdies begins selling the Blackbird in 2015.

Birdies was launched in November 2015 after two friends, both busy moms, decided to create stylish slippers for home entertaining. Declaration of Marisa Sharkey ¶¶ 2–4 & Ex. A (S.F. Chronicle article). They designed the "Blackbird" slipper and began Birdies by selling from the Birdies website and occasional trunk shows, storing the shoes in one of their garages. Sharkey Decl. ¶ 3. The Blackbird, a classic slipper



that can be worn inside or outside, appears as a loafer on the outside with the comfort of a slipper on the inside.  Sharkey Decl. ¶ 5 & Ex. B (Oct. 7, 2016 Facebook post displaying key features of Birdies' slippers).  It was originally created in calf hair.  The image above depicts the original Blackbird, as shown on Birdies' website in 2016.  Sharkey Decl. ¶ 6 & Ex. C.[2]  Additional pictures of the original (2015) Blackbird, including the pictures shown as thumbnail images in the screenshot above, as well as an Instagram post from 2016 showing the original Blackbird, are provided below:



Sharkey Decl. ¶¶ 7–8; *id.* Exs. E–H (left) & Ex. J (right); *see also id.*, Exs. D, I.  The brand gained increased popularity in 2016 when Meghan Markle, at the time filming the television series Suits, began wearing Birdies, with pictures of her in the Blackbird posted on Instagram.  Sharkey Decl. ¶ 9 & Ex. K.  Then in 2018, Meghan Markle was photographed wearing the Blackbird when on a trip with Prince Harry in New Zealand.  Sharkey Decl. ¶ 10; Declaration of Jessica Kaempf, Ex. 1 (CNBC article) at BIRDIES_00000640.

---

[2] Although this Internet Archive capture of Birdies' website is from 2016, the shoes shown here are the same shoes as those that were sold in 2015.  *See* Sharkey Decl., Exs. C–I & ¶¶ 3, 6–8.  For purposes of this motion for summary judgment, whether this image is from 2016 or 2015 is irrelevant, as either way it predates the asserted patents.  Further, "[a]s a resource the accuracy of which cannot reasonably be questioned, the Internet Archive has been found to be an acceptable source for the taking of judicial notice."  *Pond Guy, Inc. v. Aquascape Designs, Inc.*, No. 13-CV-13229, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014) (collecting cases); *see also Erickson v. Neb. Mach. Co.*, No. 15-CV-01147-JD, 2015 WL 4089849, at *1 n. 1 (N.D. Cal. July 6, 2015).

Since the Blackbird was first created in 2015, it has been introduced in different materials. Sharkey Decl. ¶ 11.  In 2016, the Blackbird was introduced in suede, and in 2021, the Blackbird was offered in knit.  *Id.* ¶¶ 11–12.  The knitted Blackbird came as a response to a general desire for material that worked better for warmer months, customer feedback seeking vegan, washable material, and through conversations with Birdies' third-party development office at the time, Global Brand Group.  *Id.* ¶ 12.  The knitted Blackbird uses the same Blackbird silhouette with a washable engineered knit material.  Sharkey Decl. ¶¶ 12–14 & Exs. L, M (Birdies' Facebook posts from February 2021 saying, "Same fan-favorite flats, new material & colors" and "Our best-selling Blackbird silhouette is now available in a washable engineered knit.").

Today, Birdies has thirty-three employees, including part-time and seasonal employees, and is still led by the same two founders who launched Birdies.  Birdies sells the Blackbird in calf hair, suede, and knit, along with other styles of flats, slides, and sneakers.  Sharkey Decl. ¶ 15.

### B.     Rothy's files its first application for the asserted patents in 2017.

On May 10, 2017, well over a year after Birdies launched the original Blackbird, Rothy's filed a patent application for what ultimately issued as the '016 patent.  Docket ("Dkt.") No. 41 ("Am. Compl.") ¶ 30.  Rothy's filed additional patent applications in 2019 and 2021, which led to the other asserted patents.  *Id*. ¶¶ 31–34.  Rothy's claims that each of the asserted patents are entitled to a priority date of May 10, 2017.[3]  Kaempf Decl., Ex. 3 (Rothy's Supp. Resp. to Birdies' Interrog. No. 3) at 10.  Top, side, and bottom images of the five patents can be found in Appendix A to this motion.  The patents all claim the "ornamental design for a shoe, as shown and described," and include figures of generally flat shoes that share certain features.  Am. Compl., Exs. A–E.  For example, each of the claimed designs in the asserted patents include an angled heel counter.

---

[3] For purposes of this Motion, Birdies has identified prior art based on the May 10, 2017 priority date, even though there is no basis for the earlier filing date for certain asserted patents.

| '016 Patent | '017 Patent | '425 Patent | '718 Patent | '874 Patent |
|---|---|---|---|---|
| | | | | |

All five claimed designs also show a protruding "tongue" with empty space on either side of the tongue, and a generally flat sole. These features are identified in the image from the '016 patent:



Beyond these general similarities, however, the asserted patents also reflect many differences, particularly in terms of the purported material of the shoe, the color scheme, and the shape of the toe. For example, the '016 patent shown above, the first patent for which an application was filed, includes a capped toe and specifically states that the "figures include textured portions, which is designed to show a stitched fabric of the design." *Id.* Ex. A. By contrast, the remaining patents do not include this language. *Id.* Ex. B, C, D, E. The '017 patent in particular shows the absence of any knitted or stitched material. *Id.* Ex. B.

The patents also reflect differences in color and color schemes. The '017 patent does not depict any particular color. *Id.* Ex. B. The '718 patent depicts a black shoe, and the '425 patent includes a color contrast with a capped toe.[4] *Id.* The '874 patent also reflects a color contrast between the heel and the remainder of the shoe. *Id.* Ex. E. Finally, whereas the '016 patent reflects a rounded or almond-shaped toe, the '017, '425, '718 and '874 patents show pointed toes:

| U.S. D885,016 | U.S. D885,017 | U.S. D870,425 | U.S. D909,718 | U.S. D925,874 |
|---|---|---|---|---|
| | | | | |

---

[4] *See* 37 C.F.R. § 1.152 (2020) ("Solid black surface shading is not permitted [in design patents] except when used to represent the color black as well as color contrast.").

### C.      Rothy's asserted patents follow a trend of slipper-cut ballerina shoes.

The style of shoe reflected in the asserted patents, sometimes called slipper-cut ballerina shoes or smoking slippers, dates back to at least the nineteenth century.[5]  A patent from January 11, 1870 (shown to the right) provides an example of the silhouette.  Kaempf Decl., Ex. 4 (ROTHYS0000844); *see also id.,* Ex. 5 (Steinhart Dep.[6]) at 13:20–14:22, 19:12–24.



What began as an English men's slipper evolved into a shoe style.  Kaempf Decl., Ex. 5 (Steinhart Dep.) at 13:6–14:12.  The illustration to the right depicts a men's slipper with a rounded toe, low heel, and velvet upper with a floral design from 1880 to 1885.[7]  In 1993, the shoe company Stubbs & Wootton began selling traditional English velvet slippers, taking it to other fabrics including cotton and needlepoint.  Kaempf Decl., Ex. 5 (Steinhart Dep.), at 11:16–12:11.

Beginning around 2011, more manufacturers began selling this style of flat shoe.  *Id.*, Ex. 7 (Wall St. J. article) (Nov. 7, 2012).  What were often referred to as "smoking slippers," emerged as "power flats."  *Id.*  Publications covered celebrities wearing smoking slippers "as an alternative to pumps with skirts and dresses, or putting on a pair to add a refined touch to jeans."  *Id.*, Ex. 8 (the FashionSpot) (Oct. 11, 2012); *see also id.* Exs. 9–10 (Your Next Shoes) (June 9, 2013); 11–12 (WWD) (Sept. 26, 2011) (calling the smoking slipper "the hot trend in flat footwear for fall").  One article called smoking slippers "[f]all's new wear-with-everything shoe," coming "in everything from monogrammed velvet to sparkling sequins."  *Id.*, Ex. 8 (the FashionSpot).  Other

---

[5] Rothy's describe its shoes purportedly protected by these patents as "knitted loafers," specifically "a slipper cut ballerina flat having a rounded toe" and "a slipper cut ballerina flat having a pointed-toe."  Am. Compl. ¶ 21.

[6] Frank Steinhart, vice president at Stubbs & Wootton was deposed on September 30, 2021.

[7] Kaempf Decl., Ex. 6 (John Peacock, *Shoes: The Complete Sourcebook* 66, 77 (2005)).

blogs and websites similarly discussed the trend.  *Id.*, Exs. 13 (Shoptalk) (July 20, 2011); 14 (Blondie's Lipstick) (Nov. 12, 2012).



Kaempf Decl., Ex. 14



Kaempf Decl., Ex. 8

By May 10, 2017, when Rothy's filed the application for the '016 patent, numerous shoe companies, including Birdies, were selling loafers and flats styled like smoking slippers, in a range of materials, toe shapes, heel sizes, color schemes, and different ornamentation, with some slippers including ornaments such as bows and tassels.  *See, e.g.*, Kaempf Decl., Exs. 2, 8, 9–10, 11–12, 15.  Such preexisting shoes included loafers and slipper-cut ballerinas in knitted, stitched, woven, or other textured material, as shown in the sampling below:



*Id.* Exs. 16, 20–26, 29–31, 38, 40, 42; *see also id.* Ex. 28, 32, 34, 41.

For example, Stubbs & Wootton has sold "stitched" needlepoint slippers since at least 2010. *Id.* Ex. 5 (Steinhart Dep.), at 29:18–35:1; 63:11–20; *see also id.* Ex. 27 (Haskins Decl.), ¶ 13, *id.* Ex. 36 (invoice showing July 29, 2016 sale). As a vice president for Stubbs & Wootton explained, this shoe is a classic smoking slipper with cotton yarn stitched onto the fabric. *Id.* Ex. 5 (Steinhart Dep.), at 16:14–20, 30:5–17, 33:22–35:1. The needlepoint material is one of several materials that Stubbs & Wootton has used for its slippers since it began selling them in 1993. *Id.* at 11:16–22, 15:6–13, 19:6–8. And with all the variations of material, including needlepoint, the slippers are still considered "the same style of shoe." *Id.* at 15:6–13; Kaempf Decl., Ex. 33 (Steinhart Dep. Ex. 5); *id.,* Ex. 5 (Steinhart Dep.), at 31:21–33:25; 63:11–64:2. The Stubbs & Wootton stitched needlepoint slippers are shown below (left). As another example, the shoe company Artemis Design Co. has also offered loafers made of kilim since 2013, as shown below (right).



Kaempf Decl., Ex. 27 (Haskins Decl.) ¶¶ 9, 11 and Ex. 33 (left image); *id.* Ex. 37 (Armstrong Decl.) ¶¶ 9, 16 and Ex. 39 (right image).

Further, there were other loafers and other types of ballerina flats that were made in knitted material prior to May 10, 2017. For example, in 2016, more than a year before Rothy's filed its first application for the asserted patents, the startup shoe company, JS Shoes, introduced "a new line of affordable and customizable 3D knitted shoes." Kaempf Decl., Ex. 43 (Internet Archive of 3dprint.com dated Jan. 28, 2016). Indeed, JS shoes was described as "the company that made the world's first 3D knitted footwear." *Id.* Ex. 44 (Internet Archive of mikeshouts.com dated Feb. 2, 2016); *compare id.*, and Ex. 43 (describing a "new 3D knitting technology"), *with* Am. Compl. ¶ 5 (claiming Rothy's has a "novel '360 degree' 3-D knitting process"). The JS Shoes 3D knitted shoe is shown above. *Id.* Ex. 43 at 2; *see also id.* Ex. 45 (JSshoe.com) (Internet Archive of JSshoe.com, dated Jan. 17, 2016).



As another example, the well-known shoe company, Skechers, introduced a wide variety of ballerina flats and loafers described as "knit" and "engineered knit," at least as early as March 2016. Kaempf Decl., Ex. 46 (Paccione Decl.) ¶¶ 5–8; *see also*, *e.g.*, *id.* Ex. 49 (customer order and invoice, dated March 2016). Amongst other shoes, Skechers introduced the Cleo Wham, Bikers Lounger, and Cleo Sass shoes, shown below:

*Id.* Ex. 47 and Ex. 48 (Skechers Product Line Sheets) (annotated). These shoes were offered for sale to wholesalers and sold in the United States in 2016, well before the May 10, 2017 filing date. *Id.* Ex. 46 (Paccione Decl.) ¶¶ 7, 9–14; *id.* Exs. 49, 51–52 (Customer Orders and Invoices in 2016). In addition to being offered for sale to wholesalers, certain products were publicly available and

described online prior to May 10, 2017.  *Id.* Ex. 17 (Internet Archive capture dated Jan. 27, 2017 of Zappos page) at 2 (showing Cleo Wham and customer review).

Rothy's itself sold two ballerina flats made in knit, "The Flat" and "The Point," as early as March 14, 2016.  Because such shoes were sold more than a year prior to the filing date of the earliest asserted patent, they are prior art to the asserted patents.



Kaempf Decl., Ex. 18 (Rothy's Webpage Captured on Internet Archive); *see also id.* Ex. 19 (Rothy's Resp. to RFA Nos. 51–53) at 44–46 (admitting that The Flat and The Point were publicly available prior to May 9, 2016, and that such shoes have a knit upper).

## III.    STATUS OF DISCOVERY

In the parties' June 30, 2021 case management statement, Birdies explained that because the construction of Rothy's patents has the potential to narrow—if not dispose of—Rothy's case, "early summary judgment motions involving claim construction" are "appropriate."  Dkt. No. 28 at 15.  The parties exchanged initial discovery requests in July 2021, and discovery has been proceeding for more than five months.   Kaempf Decl. ¶ 2.   Throughout July, August, and September 2021, Birdies served subpoenas to third party prior art companies, including Stubbs & Wootton, Artemis Design Co., and Skechers, and provided notices of the subpoenas to Rothy's. *Id.*  The parties deposed a corporate representative of Stubbs & Wootton in September 2021.  *Id.*, Ex. 5 (Steinhart Dep.).  The third parties provided declarations authenticating their produced documents between September and December 2021.  *Id.* Ex. 27 (Stubbs & Wootton), Ex. 38 (Artemis Design Co.), and Ex. 46 (Skechers).  Rothy's made its first production of documents on

November 4, 2021, and made its second production on November 12, 2021. *Id.* In its second production, Rothy's produced a prior art patent, which identified the JS Shoes "3D Knitted Shoe." *Id.* Ex. 53. On December 17, 2021, the parties filed a stipulation to extend the case schedule, primarily in light of the appearance of Rothy's new counsel. Dkt. 64, 65.

Summary judgment is appropriate now as there are no genuine disputes of fact regarding the issues of liability. Further, to prevent the time and expense associated with potentially unnecessary discovery, Birdies will be filing a motion to stay the case pending the Court's ruling on the present Motion.

## IV.   LEGAL STANDARD

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984) (affirming summary judgment). "Where no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law, the court should utilize the salutary procedure of Fed. R. Civ. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Id.* And courts routinely grant summary judgment in design patent cases. *See, e.g.*, *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326 (Fed. Cir. 2014) (affirming summary judgment grant of invalidity); *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1339 (Fed. Cir. 2020) (affirming grant of non-infringement).

Expert discovery is not necessary to grant summary judgment, particularly in non-complex cases. *See Kyocera Wireless Co. v. President Elecs., Ltd.*, 179 F. App'x 53, 54 (Fed. Cir. 2006) (citing *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984)). Specifically, "[t]here is no such need for expert testimony in litigation involving a design patent . . . where no

special technological problems are presented and the legal issues, as will be seen hereinafter, are particularly adapted to summary disposition." *Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co.*, 444 F.2d 295, 297–98 (9th Cir. 1970).

## V.   ARGUMENT

"[I]n determining whether a patent is valid and, if valid, infringed, the first step is to determine the meaning and scope of each claim in suit." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (quoting *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)).  Patent claims must be construed consistently for both the validity and the infringement analyses.  *See id.*  "A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement."  *Id.* (quoting *Sterner Lighting, Inc. v. Allied Elec. Supply, In*c., 431 F.2d 539, 544 (5th Cir. 1970)).

Here, under any construction of the asserted patents, this Court should grant summary judgment.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–91 (1996) (claim construction is "an issue for the judge, not the jury," *id.* at 391).  Rothy's has accused Birdies' Blackbird shoe of infringement, which makes the grant of summary judgment particularly compelling here: to the extent Rothy's accuses the knitted Blackbird of infringing the asserted patents, then the asserted patents are substantially the same as numerous earlier slippers— including Birdies' original 2015 Blackbird—rendering the patents invalid as a matter of law. Specifically, the asserted patents are either anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103.  However, were the Court to construe the patents narrowly such to preserve validity, then this narrow interpretation means that Birdies does not infringe.

### A.   The asserted patents are invalid.

The asserted patents are invalid as either anticipated or obvious.  Under Rothy's contention that the knitted Blackbird is "substantially the same" as the asserted patents, Am. Compl. ¶¶ 39–

40, the original Blackbird must also be substantially the same as the designs depicted in those patents—the only possibly meaningful difference between the original and knitted Blackbird is the material.  At least one of the asserted patents (the '017 patent) does not claim any particular material and is therefore invalid as anticipated.  *See* 35 U.S.C. § 102; *see also Upsher-Smith Lab'ys, Inc. v. Pamlab, LLC*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) ("A century-old axiom of patent law holds that a product 'which would literally infringe if later in time anticipates if earlier.'" (quoting *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003)). And even if the Court construes the remaining patents to require a knit material, these patents are invalid as obvious: offering the Blackbird silhouette in knit would have been obvious "to a person having ordinary skill" in the field.  *See* 35 U.S.C. § 103.

### 1.    The '017 patent is invalid as anticipated.

A patent is invalid as anticipated if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."  35 U.S.C. § 102(a).  Specifically, "[d]esign patent anticipation requires a showing that a single prior art reference is 'identical in all *material respects*' to the claimed invention."  *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 638 (Fed. Cir. 2015) (emphasis added) (citing *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001)).  "In other words, the two designs must be substantially the same."  *Id.* (citing *Door-Master*, 256 F.3d at 1312, 1313).  "Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001).

Rothy's alleges that Birdies' knitted Blackbird infringes the '017 patent, which provides a silhouette of a slipper-cut ballerina with a tongue, empty space on each side of the tongue, and a generally flat sole.  Am. Comp., Ex. B; *supra* Section II.B.  Importantly, the '017 patent shows no

discernable texture.  *See id.*  And, while Rothy's expressly included the description of "textured portions . . . designed to show a stitched fabric of the design" when filing for the '016 patent in 2017, Am. Compl. Ex. A, Rothy's included no such claim for the material of the '017 patent design, *id.* Ex. B.  Thus, the Court should construe the '017 patent as not requiring knit.[8]

Under that construction, then Rothy's own assertion of infringement means that the '017 is invalid as anticipated.  That is, Rothy's allegation that the knitted Blackbird is substantially the same as the claimed design in the '017 patent requires a finding that the Birdies original (prior art) Blackbird is likewise, and necessarily, substantially the same.[9]  This comparison is shown below:

| Birdies 2015 Blackbird | Rothy's – '017 Patent | Birdies Knitted Blackbird |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

*See* Sharkey Decl., Exs. D–F; Am. Compl. ¶ 41.

Birdies' 2015 Blackbird, along with each of the webpages and other online publications showing Birdies' 2015 Blackbird, are prior art to the asserted patents.  *See* Sharkey Decl., Exs. C (Internet Archive capture of Birdies website, dated November 11, 2016); D–H (Facebook posts

---

[8] Out of the remaining asserted patents, the only patent that clearly describes the use of knit or "stitched" material is the '016 patent.  The '718, '425, and '874 patents do not describe such material and thus should be construed accordingly.  Further, even if the Court construes these patents to claim knitted material, the use of knit is not a significant difference, and thus, the '016, '718, '425, and '874 patents are also invalid as anticipated.  To the extent the Court finds knit would be a significant difference, Birdies moves for summary judgment of invalidity for obviousness for these patents.  *See infra* Section V.A.2.

[9] As depicted in the sampling above, *see supra* Section II.C, the original Blackbird is just one of several shoes that could serve as a prior art reference and invalidate Rothy's patents.

dated October 19, 2015); I–J (Instagram posts dated December 3, 2015 and October 19, 2016); *see also* 35 U.S.C. § 102(a) (prior art is material that is "patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."); Sharkey Decl. ¶¶ 6–8 (explaining that the aforementioned exhibits show the 2015 Blackbird and that each of the pages was publicly available prior to May 10, 2017).[10]

In sum, based on Rothy's own allegations, and because the '017 patent should be construed as not requiring knit, Birdies' 2015 Blackbird invalidates the '017 patent. This Court should grant summary judgment for Birdies that the '017 patent is invalid under 35 U.S.C. § 102.

### 2. The asserted patents are invalid as obvious.

A patent that is "not identically disclosed" under 35 U.S.C. § 102 may still be invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. In other words, even if a patent is not anticipated because a prior art is not "substantially the same" as the asserted patents, *High Point*, 621 F. App'x at 638, the asserted patents may still be invalid as obvious. *See* 35 U.S.C. § 103 "The ultimate inquiry in an obviousness analysis is 'whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved.'" *High Point Design LLC v. Buyer's Direct, Inc.*, 730 F.3d 1301, 1312 (Fed. Cir. 2013) (quoting *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996)).

Summary judgment is "appropriate if 'the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors.'" *MRC*, 747 F.3d at 1331 (quoting *TriMed, Inc. v.*

---

[10] Each of the cited Internet Archive, Facebook, and Instagram pages is dated prior to May 10, 2017, and is thus a prior art "printed publication" (separate and apart from the prior art product).

*Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010)) (affirming summary judgment grant of invalidity).  While "obviousness is determined from the vantage of 'the designer of ordinary capability who designs articles of the type presented in the application[,]' . . . an expert's opinion on the legal conclusion of obviousness is neither necessary nor controlling." *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1564 (Fed. Cir. 1988) (citation omitted), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc).

The obviousness analysis proceeds in two steps: the first involving a "primary reference" and the second involving "secondary references."  *See Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021).  Under this two-step process, all of the asserted patents are invalid as obvious.

### i.        The 2015 Blackbird qualifies as a primary reference.

At the first step, one must identify "a 'primary reference,' i.e., a single reference that creates 'basically the same visual impression' as the claimed design." *Id.* (quoting *Durling*, 101 F.3d at 103).  Identifying the primary reference "requires the trial court to: (1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates "basically the same" visual impression." *Durling*, 101 F.3d at 103.  "'To be "basically the same," the designs at issue cannot have "substantial differences in the[ir] overall visual appearance[s]"' or require 'major modifications'; any differences must instead be slight." *Id.* (alterations in original) (quoting *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020)).  Courts "should do a side-by-side comparison of the two designs to determine if they create the same visual impression." *High Point*, 730 F.3d at 1314.

Here, there can be no question that, under Rothy's contentions, Birdies' original Blackbird creates "basically the same" visual impression as the asserted patents.  That is, by accusing the knitted Blackbird of infringing the asserted patents—some of which claim no specific material—

Rothy's is claiming the Blackbird silhouette creates the same impression as the asserted patents. And because Rothy's is asserting that Birdies infringes all five patents, the Court should find that the correct visual impression created by the patented design is a loafer or slipper-cut ballerina flat with a protruding tongue and generally flat sole, as exemplified in the 2015 Blackbird.

This is further illustrated by the side-by-side comparisons depicting Birdies' 2015 and knitted Blackbird against Rothy's asserted patents. Appendix B contains larger comparisons from the side, top, and bottom.

| *2015 Blackbird* | '016 Patent | '718 Patent | '425 Patent | '874 Patent | *Knitted Blackbird* |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

The similarities shown above render the 2015 Blackbird a primary reference. *See Campbell*, 10 F.4th at 1276 ("slight differences . . . do not substantially detract from the similarity in overall visual appearances"). For example, in *MRC*, the Federal Circuit found that the district court's identification of merely "three key similarities" between the prior art design and the claimed design was sufficient to render the prior art as a "primary reference." 747 F.3d at 1332. In that case, the design patent at issue depicted a pet jersey, with a V-neck collar, "an interlock fabric panel on the side portion of the design," and "additional ornamental surge stitching on the rear portion of the jersey." *Id.* Notwithstanding that the prior art jersey had a "round neck," with "mesh" on the side, and no additional ornamental surge stitching on the rear of the jersey, the court found that the prior art jersey created "basically the same" visual impression because both designs had basic features of a pet jersey, including (1) "an opening at the collar portion for the head"; (2) "two openings and sleeves stitched to the body of the jersey for limbs"; and (3) "a body portion on which a football logo is applied." *Id.*

Just as in *MRC*, the 2015 Blackbird shares the same underlying features as the asserted patents, including a protruding tongue and a generally flat sole, and "create[s] basically the same visual impression" as the claimed designs. *Cf. id.* at 1332. Rothy's itself necessarily relies on such similarities to assert infringement. The 2015 Blackbird qualifies as a primary reference.

### ii. Any of a number of slipper-cut ballerinas, loafers, and flats with a knit appearance qualify as a secondary reference.

At the second step, one "must determine whether, using secondary references, an ordinary designer would have modified the primary reference to create a design that has the same overall visual appearance as the claimed design." *Campbell*, 10 F.4th at 1275. While it is true that "[i]n order for secondary references to be considered, . . . there must be some suggestion in the prior art to modify the basic design with features from the secondary references," the Federal Circuit has explained that "the mere similarity in appearance . . . itself provides the suggestion that one should apply certain features to another design." *MRC*, 747 F.3d at 1334 (first and second alterations in original) (citation omitted). "While expert testimony may be used to influence the court's decision, expert opinion on obviousness is not required." *MRC Innovations, Inc. v. Hunter MFG., LLP*, 921 F. Supp. 2d 800, 809 (N.D. Ohio 2013), *aff'd*, 747 F.3d 1326.

To the extent the Court determines that any of the asserted patents are construed as including an appearance of "stitched," *see* Am. Compl., Ex. A, or knitted material, the patents are invalid as obvious.[11] Multiple flat shoes, including smoking slippers, loafers, and other ballerina flats, used knit, and other materials having the appearance of knit, prior to May 10, 2017 (the earliest possible priority date). *See supra* Section II.C. For example, as discussed above and as shown below, Stubbs & Wootton, Artemis Design Co., Skechers, JS Shoes, and Rothy's each sold

---

[11] If the patents were construed any narrower, such as to include the single black color, or distinct heel counter angle, then Birdies' product would not infringe, as it does not include these elements. *See infra* Section V.B.

smoking slippers, loafers, and other ballerina flats with knit or similar material. Any of these references can be combined with the 2015 Blackbird to invalidate the asserted patents.



| Stubbs & Wootton - "Stitched" Slipper | Artemis Design Co. – Turkish Kilim Shoes | JS Shoes - 3D Knitted Shoes |
| Skechers - "Engineered Knit" Cleo Wham | Skechers - "Knit" Bikers Lounger | Rothy's – The Flat and The Point |

These products, along with the webpages and other online publications showing these products, are prior art to the asserted patents. Specifically, each of the references relating to Stubbs & Wootton, Artemis Design Co., JS Shoes, and Skechers pre-date May 10, 2017, and the references relating to Rothy's The Flat and The Point predates May 10, 2016.[12] These references are therefore prior art under 35 U.S.C. § 102. Evidence supporting the prior art status of each of the references is below:

| Secondary Reference[13] | Evidence Establishing References as Prior Art |
|---|---|
| Stubbs & Wootton "Stitched" needlepoint slipper | Kaempf Decl., Ex. 5 (Steinhart Dep.) at 29:18–35:1; 63:11–20; *id.*, Ex. 33 (social media post showing needlepoint slipper dated April 11, 2017)); *id.* Ex. 36 (invoice for needlepoint slipper dated July 29, 2016); *id.*, Ex. 27 (Haskins Decl.), ¶¶ 9-11 13–14 (authenticating social media post and invoice as Stubbs & Wootton record) |

---

[12] The Flat and The Point are prior art under the America Invents Act because they were disclosed more than one year prior to May 10, 2017. 35 U.S.C. § 102(b) (limiting grace period for disclosures by inventor to "disclosure[s] made 1 year or less before the effective filing date").

[13] While the secondary references in this chart are referred to as products, each online printed publication showing a prior art product is likewise itself prior art.

| Secondary Reference[13] | Evidence Establishing References as Prior Art |
|---|---|
| Artemis Design Co. Kilim Shoes | Kaempf Decl., Ex. 39 (social media post showing kilim shoes dated December 10, 2013); *id.* Ex. 37 (Armstrong Decl.), ¶¶ 9, 16 (authenticating social media post as Artemis Design Co. record) |
| JS Shoes 3D-Knitted Shoes | Kaempf Decl., Ex. 45 (Internet Archive captures showing 3D knitted JS shoes dated January 17, 2016); *id.*, Ex. 43 (Internet Archive capture showing 3D knitted JS shoes dated, January 28, 2016); *id.*, Ex. 44 (Internet Archive capture showing 3D knitted JS shoes dated, February 2, 2016) |
| Skechers Cleo Wham | Kaempf Decl., Ex. 47 (identifying Cleo Wham as style 48487); *id.* Ex. 49 (invoice and customer order for style 48487 ordered by customer on March 1, 2016 and shipped to customer on March 8, 2016); *id.* Ex. 46 (Paccione Decl.), ¶¶ 5, 8, 9, 13, 14 (authenticating product line sheets, invoices and customers orders as business records, and explaining that "Pri-Date" reflects customer order date and "Shp-Date" reflects shipment date); *id.* Ex. 17 (Internet Archive capture of Zappos page showing Cleo Wham). |
| Skechers Bikers Lounger | Kaempf Decl., Ex. 48 (identifying Bikers Lounger as style 49345); *id.* Ex. 51 (invoice and customer order for style 49345 ordered by customer on November 21, 2016 and shipped to customer on November 30, 2016); Ex. 47 (Paccione Decl.), ¶¶ 6, 8, 11, 13, 14 (authenticating records, and explaining customer order and shipment dates) |
| Rothy's Flat and Point | Kaempf Decl., Ex. 18 (Rothy's Webpage Captured on Internet Archive dated March 14, 2016); *see also id.*, Ex. 55 (Rothy's Resp. to RFA Nos. 51–53) at 44–46 (admitting that The Flat and The Point were publicly available prior to May 9, 2016, and that such shoes have a knit upper) |

Each of these references are sufficiently related to the primary reference such that "the appearance of certain ornamental features in one would suggest the application of those features to the other.'" *See MRC*, 747 F.3d at 1331, 1334. For example, in *MRC*, the Federal Circuit affirmed the district court's determination of secondary references, on the basis that the references fell into the same general category of goods as the claimed designed. *Id.* at 1334 ("[T]he secondary references that the district court relied on were not furniture, or drapes, or dresses, or even human football jerseys; they were football jerseys designed to be worn by dogs."). Here too, each of the above references are loafers or ballerina flats, *see* Am. Compl. ¶ 21, with a generally flat sole, and

four of the references (Stubbs & Wootton, Artemis Design Co., JS shoes, and Skechers Bikers Lounger) include the same protruding tongue as the claimed designs.  The mere visual similarity between these references and the claimed design is sufficient to provide the motivation to combine them.  *See MRC*, 747 F.3d at 1334.

Further, each of these references disclose a knitted or stitched appearance, and thus provide the modification necessary to bridge the only alleged gap between the original Blackbird and the asserted patents.  Indeed, the only actual difference Rothy's identifies between the Blackbird with and without knit is the material.  Am. Compl. ¶ 38.[14]  And changing the material in the already-existing Birdies' 2015 Blackbird (which had also already previously changed material to suede) would have been obvious—numerous flats, including flats styled like smoking slippers such as the Stubbs & Wootton shoe, had used a knit or stitched material.  *See supra* Section II.C.  That is, it would have been sufficient for "an ordinary designer" to take a classic smoking slipper (like the 2015 Blackbird) and use a knit material.  *See Campbell*, 10 F.4th at 1275.

### iii.      No secondary considerations preclude a finding of obviousness.

Finally, no amount of secondary considerations can overcome the clear showing of obviousness that exists here.  *See Dow Chem. Co. v. Halliburton Oil Well Cementing Co.,* 324 U.S. 320, 330 (1945) ("[Secondary] considerations are relevant only in a close case where all other proof leaves the question of invention in doubt.").  And to the extent Rothy's intends to suggest any commercial success of its products is evidence of nonobviousness, that argument is irrelevant because there is no nexus between Rothy's alleged commercial success and the asserted patents.

---

[14] Rothy's vaguely states that the Birdies without a knitted upper "has a substantially different overall appearance and visual impression from the Infringing Product."  Am. Compl. ¶ 38. However, Rothy's cites only that the knitted Blackbird were sized slightly differently (which was because of a temporary manufacturing issue, *see* Sharkey Decl. ¶ 12).  *See* Am. Compl. ¶ 38. Indeed, as the screen shot Rothy's provides illustrates, other than the material, the shoes are described the same way and all the other features are the same.  *Id.*

*In re Affinity Labs of Tex., LLC*, 856 F.3d 883, 901 (Fed. Cir. 2017) ("Evidence of commercial success is only relevant to the obviousness inquiry 'if there is a nexus between the claimed invention and the commercial success.'" (quoting *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006).)).  Rothy's own complaint alleges it is "an innovative ladies' footwear company with a core message of environmental sustainability," explaining that "the company has repurposed over 75 million plastic bottles" to create Rothy's shoes.  Am. Compl. ¶ 4.  But Rothy's does not claim its patents cover its recycled plastic material, and any success from use of this material is unrelated to its patents.  Rothy's asserted patents are invalid as obvious, and there are no secondary considerations that save its patents from invalidity.

## B.    Birdies does not infringe.

If this Court denies summary judgment on invalidity, then this Court should find Birdies does not infringe.  Rothy's cannot simultaneously maintain that its patents are valid and that Birdies infringes.  *See Amazon.com,* 239 F.3d at 1351.  Any elements of Rothy's patents that could prevent them from being held invalid would also distinguish them from Birdies' knitted Blackbird such that Birdies does not infringe.

"Determining whether a design patent has been infringed is a two-part test:  (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design."  *Lanard Toys*, 958 F.3d at 1341.  A finding of non-infringement is proper where the claimed and accused designs are "'sufficiently distinct' and 'plainly dissimilar,' such that an ordinary observer clearly would not find the two designs 'substantially the same.'"  *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 898 (Fed. Cir. 2020) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc)).  "When the designs are not 'plainly dissimilar,' the analysis 'will benefit from a comparison of the claimed and accused designs with the prior art.'"  *Id.*  Importantly, when "the

differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676.  "And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.*

"[C]ourts routinely grant summary judgment through a visual determination that the compared products are plainly dissimilar," even where there is "expert testimony purporting to establish material fact disputes." *Voltstar Techs., Inc. v. Amazon.com, Inc.*, No. 13-CV-5570, 2014 WL 3725860, at *4 (N.D. Ill. July 28, 2014), *aff'd*, 599 F. App'x 385 (Fed. Cir. 2015); *see also Harel v. K.K. Int'l Trading Corp.*, 994 F. Supp. 2d 276, 284 (E.D.N.Y. 2014) ("[A] visual comparison alone is sufficient to determine non-infringement under the ordinary observer test").

### 1.    Under any construction that escapes invalidity, the asserted patents are plainly dissimilar from the knitted Blackbird.

Here, under any construction of the patents narrower than one which would lead to invalidity, Birdies does not infringe.  In other words, to the extent the Court determines that there are features in the claimed designs that differentiate them from the original Blackbird, such features must be equally considered for purposes of non-infringement.  *See Amazon.com*, 239 F.3d at 1351.  For example, as shown above (*see supra* Section II.B), all of Rothy's patents include a raised heel counter, with the counter and main shoe line intersecting at a distinct angle, while Birdies' knitted Blackbird remains straight through the back counter.



Moreover, each asserted patent contains other elements, for example relating to color contrast and toe shape, that further differentiate them from the knitted Blackbird.  Below is a chart

identifying features that could be included in the Court's construction of each patent, and an explanation of how such features render the knitted Blackbird "plainly dissimilar."

| | Patent | Features of the Claimed Designs | Birdies Knitted Blackbird |
|---|---|---|---|
| '016 Patent |  | Angled heel counter; color contrast between capped toe and remainder of shoe | No angled heel counter; no capped toe; intarsia line around toe and topline in a single color |
| '017 Patent |  | Angled heel counter; single color; pointed toe | No angled heel counter; intarsia line around toe and topline in a distinct color from rest of shoe. |
| '425 Patent |  | Angled heel counter; color contrast between capped toe and remainder of the shoe; pointed toe | No angled heel counter; no capped toe; intarsia line toe and topline in a single color |
| '718 Patent |  | Angled heel counter; single color, specifically black[15]; pointed toe | No angled heel counter; intarsia line around toe and topline in a distinct color. |
| '874 Patent |  | Angled heel counter; color contrast between heel and remainder of shoe; pointed toe | No angled heel counter; consistent color throughout with intarsia line around toe and topline in a distinct color. |

In sum, to the extent the Court construes the patents narrowly, no material facts regarding non-infringement can be disputed.  It is clear from a simple visual comparison that the knitted Blackbird is plainly dissimilar from the asserted patents.

> **2.      The absence of the features that differentiate the patents from the original Blackbird confirms non-infringement.**

Finally, an inspection of the prior art confirms Birdies does not infringe.  Where the designs are not "plainly dissimilar," "the analysis 'will benefit from a comparison of the claimed and accused designs with the prior art.'"  *Super-Sparkly,* 836 F. App'x at 898 (quoting *Egyptian*

---

[15] *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3071477, at *7 (N.D. Cal. July 27, 2012) (ruling that use of solid black surface shading showed that the patent claimed a black surface); *see also* 37 C.F.R. § 1.152.

*Goddess*, 543 F.3d at 678).  In conducting this analysis, the Court should pay particular attention to the "aspects of the claimed design that differ from the prior art."  *Egyptian Goddess*, 543 F.3d at 676.

Here, an inspection of the prior art, for example the original Blackbird, shows that the primary distinguishing features of the asserted patents are the angled heel and, for some of the patents, color contrasts at the toe and heel.  These features are absent from the knitted Blackbird.  And the only similarities between the patents and knitted Blackbird are well-established in the prior art.  *See Lanard Toys*, 958 F.3d at 1343 (explaining that "importantly" the district court "noted that '[t]he problem for Lanard, however, is that the design similarities stem from aspects of the design that are either functional or well-established in the prior art'" (alteration in original) (quoting *Lanard Toys Ltd. v. Toys "'R'" Us-Del., Inc*., No. 3:15-CV-849, 2019 WL 1304290, at *15 (M.D. Fla. Mar. 21, 2019))).  A finding of non-infringement is thus proper.

Ultimately, Rothy's asserts that its patents broadly cover designs that are well established in prior art.  *Cf. id.* at 1345 ("Lanard's position is untenable because it seeks to . . . extend the scope of the D167 patent far beyond the statutorily protected 'new, original and ornamental design.'" (quoting 35 U.S.C. § 171)).  Any features of Rothy's patents that distinguish them from prior art lead to a finding of non-infringement.  Accordingly, to the extent that prior art does not render Rothy's patents invalid, it highlights the important differences between Rothy's patents and Birdies' knitted Blackbird.  If the Court declines to declare Rothy's patents invalid, this Court should grant summary judgment of non-infringement.

## VI.    CONCLUSION

Birdies respectfully requests this Court grant summary judgment that each of the asserted patents is invalid.  In the alternative, Birdies respectfully requests that this Court grant summary judgment of non-infringement on each of the asserted patents.

Dated:   December 27, 2021                     FENWICK & WEST LLP


                                               By: *David K. Tellekson*
                                                   David K. Tellekson

                                                   Counsel for Defendant
                                                   Birdies, Inc.